# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| JOSEPH E. BEAUDION, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 09-1081 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## **OPINION & ORDER**

Before the Court is Joseph E. Beaudion's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (R.2 Doc. 1), First Motion to Amend 28 U.S.C. § 2255 (R.2 Doc. 4),[1] Petitioner's Motion to Supplement the Record (R.2 Doc. 5), and Respondent's Motion to Dismiss. (R.2 Doc. 6). For the following reasons, Respondent's Motion to Dismiss is GRANTED and the Petition is DISMISSED WITH PREJUDICE.

### PROCEDURAL HISTORY

On June 30, 2007, a federal search warrant was issued to confiscate Petitioner's computer, after it was discovered that it contained child pornography. (R.2 Doc. 6 at 1-2). Mr. Shiverdecker, of Advanced Computing, discovered the child pornography on June 25, 2007, after Petitioner had taken his computer to the store for repairs. (R.2 Doc. 1 at 43). Mr. Shiverdecker contacted the Normal Police Station

---

[1] Reference documents from the case number 1:08-cr-10021 will be cited as ("R.1 Doc. ___"). Reference documents from the case number 1:09-cv-01081 will be cited as ("R.2 Doc. ___").

after discovering the child pornography and subsequently two police officers arrived to inspect the media files. (R.2 Doc. 1 at 43). While the police officers were at Advanced Computing, Petitioner arrived and acknowledged that his computer contained child pornography. (R.2 Doc. 1 at 43). Petitioner subsequently agreed to go to the Normal Police Station to speak with officers further regarding the contents of his hard drive. (R.2 Doc. 1 at 43). During the interview, Petitioner admitted to not only possessing child pornography but also to receiving and downloading child pornography onto his computer. (R.2 Doc. 1 at 44).

On October 11, 2007, the United States Attorney's Office sent Petitioner a letter informing him that he was under investigation for receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2). (R.2 Doc. 6 at 16). Petitioner's attorney, Mark Johnson, responded to the letter on October 16, 2007. (R.2 Doc. 6 at 17). On March 10, 2008, the government made a formal plea offer to Petitioner. (R.1 Doc. 4, R.2 Doc. 6 at 18). Petitioner accepted this agreement on May 30, 2008, during a hearing held by this Court. (R.1 Doc. 4). This plea agreement included Petitioner's waiver of indictment and his plea of guilty to an one-count Information for the possession of child pornography, in violation of 18 U.S.C. § 2251A(a)(5)(B). (R.1 Doc. 3 & 4). On September 12, 2008, this Court sentenced Petitioner to twenty-four months imprisonment and ten years supervised release for the possession of child pornography. (R.1 Doc. 14 at 2-6).

On March 10, 2009, contrary to the terms of the written plea agreement, Petitioner filed a collateral attack motion and a forty-seven-page memorandum in

support pursuant to 28 U.S.C. § 2255. (R.2 Doc. 1). This Court ordered the Government to respond on April 29, 2009. On June 1, 2009, Petitioner filed a thirty-five-page memorandum titled "Petitioner's First Motion to Amend 28 U.S.C. § 2255" (R.2 Doc. 4), and on June 4, 2009, he filed a forty-page memorandum titled "Petitioner's Motion to Supplement [t]he Record." (R.2 Doc. 5). On June 22, 2009, the Government responded by filing its Motion to Dismiss; on the grounds that the plea agreement was enforceable, and Petitioner had waived his right to collaterally attack his conviction and/or sentence. (R.1 Doc. 4 & R.2 Doc. 6).

## DISCUSSION

Section 2255(a) of Chapter 28 of the United States Code allows "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, to move the court which imposed the sentence to vacate, set aside or correct the sentence."

Here, pursuant to Fed. R. Crim. P. 11, the parties entered into a written plea agreement ("the Agreement"). (R1. Doc. 4). The elements of this agreement included: (1) Petitioner would plead guilty to the Information, in which the Petitioner was charged with possession of child pornography, in violation of 18 U.S.C. § 2251A(a)(5)(B); (2) Petitioner fully understood the nature and elements of the crime; (3) Petitioner understood and agreed that the offense to which he would

3

plead guilty carried penalties including: up to ten years imprisonment, up to a $250,000 fine, up to life supervised release, and a $100 mandatory special assessment; (4) Petitioner understood that upon violation of any of the terms of his supervised release, the supervised release may be revoked and he may be imprisoned for all or part of the supervised release period without credit for time previously served; and (5) Petitioner understood and agreed that the Court may require him to pay restitution. (R.1 Doc. 4 at 2-4). The Agreement also contained the following waivers: (1) Petitioner knowingly and voluntarily waived his right to appeal any and all issues relating to the Agreement, conviction, and to the sentence; and (2) Petitioner knowingly and voluntarily waived his right to attack the conviction and/or sentence imposed collaterally on the grounds that it was imposed in violation of the Constitution or laws of the United States, that he received ineffective assistance from his attorney, that the Court was without proper jurisdiction, or that the conviction and/or sentence was otherwise subject to collateral attack. (R.1 Doc. 4 at 4-6).

Additionally, Petitioner knowingly and voluntarily agreed that if he violated the terms of the Agreement the United States would have the option to declare the Agreement null and void. (R1. Doc. 4 at 10). In the event the Government exercised its option to declare the Agreement null and void, it would be completely released from all of its obligations under the Agreement and it would be free to seek to vacate Petitioner's conviction and/or sentence, and to reinstate any previously dismissed charges or to seek Petitioner's re-sentencing. (R1. Doc. 4 at 10). In the

event the Government exercised its option to declare the Agreement null and void, Petitioner would not be allowed to withdraw from any previously accepted guilty pleas. (R1. Doc. 4 at 10). Petitioner also agreed to waive any and all double jeopardy rights, and the applicable statute of limitations should the Government seek to reinstate any charges against Petitioner or seek to have Petitioner re-sentenced. (R1. Doc. 4 at 10).

It is well settled that collateral attack waivers in plea agreements are generally enforceable. *U.S. v. Woods*, 581 F.3d 531, 534 (7th Cir. 2009). If the agreement is voluntary, and taken in compliance with Rule 11, then the waiver of appeal must be honored. *U.S. v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995). The Seventh Circuit has never been reluctant to hold defendants to their written promises. *Nunez v. U.S.*, 546 F.3d 450 (7th Cir. 2008); *United States v. Hare*, 269 F.3d 859 (7th Cir. 2001); *Wenger*, 58 F.3d 280. Additionally, Judge Easterbrook once stated that, "Empty promises are worthless promises; if defendants could retract their waivers (the practical effect, if the procedural hurdles to an effective waiver were set too high) then they could not obtain concessions by promising not to appeal." *Wenger*, 58 F.3d at 282.

In an effort to circumvent his knowing and voluntary written waiver, Petitioner couches his motion in the context of an ineffective assistance of counsel claim. (R.2 Doc. 4 at 1). He does not claim, however, that he did not knowingly and voluntarily enter into the Agreement. Instead, the crux of his argument is simply that his counsel was constitutionally ineffective for failing to file a motion to

5

suppress evidence before Petitioner agreed to plead pursuant to the written Agreement. (R.2 Doc. 4 at 8). Petitioner's argument rests on his belief that the media files located on his computer were obtained by the police officers through an illegal search, which violated his Fourth Amendment rights, and his attorney violated his Sixth Amendment right to counsel when he was ineffective by failing to raise such argument. (R.2 Doc. 4 at 2-9).

Even if Petitioner could collaterally attack his sentence and/or conviction, he cannot carry his burden of demonstrating either that (1) his counsel's representation fell below an objective standard of reasonableness or, (2) a reasonable probability exists that, but for his counsel's unprofessional representation, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Failure to move for the suppression of evidence does not raise a question about counsel's performance unless: (1) facts were alleged which show there was a basis for suppression; and (2) Petitioner "not only had, but also conveyed to his lawyer, some factual basis for filing a motion to suppress." *Duarte v. U.S.*, 81 F.3d 75, 76 (7th Cir. 1996).

Petitioner cannot satisfy the first *Duarte* prong because he cannot show that a basis existed for the suppression of evidence. The Fourth Amendment protects citizens from unreasonable searches and seizures by the government. *Christensen v. Cnty of Boone, Ill.*, 483 F.3d 454, 459 (7th Cir. 2007). The Fourth Amendment is wholly inapplicable to searches or seizures, even unreasonable ones, effectuated by private individuals not acting as agents of the government or with participation or

knowledge of any governmental official. *U.S. v. Hall*, 142 F.3d 988, 993 (7th Cir. 1998) (*quoting U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984)).

In *Hall*, a computer technician discovered child pornography on defendant's computer while he was performing maintenance work. *Id*. The government had no knowledge that the technician was going to repair defendant's computer, did not instruct the technician to inspect the files, and were only contacted once the technician discovered child pornography. *Id*. The search was initiated by the technician, and was completed in the normal course of business, with the sole purpose of testing defendant's computer. *Id*. Therefore, the Seventh Circuit held that the Fourth Amendment was inapplicable both to the technician's search, and to his later description of the pornographic evidence to law enforcement officials. *Id*. at 999.

Analogously, Mr. Shiverdecker, of Advanced Computing, discovered the child pornography on Petitioner's computer when he was performing maintenance work. (R.2 Doc. 1 at 43). Only after he discovered the media files did he contact the Normal Police Station. (R.2 Doc. 1 at 43). The police officers only confiscated the files after they had spoken with Petitioner. (R. 2 Doc. 1 at 44). Therefore, the search and seizure did not violate Petitioner's Fourth Amendment rights and there was no basis for the suppression of evidence.

Petitioner cannot satisfy the second *Duarte* prong because he cannot show that he conveyed to his attorney some factual basis for the suppression of evidence. Petitioner's argument fails because in the written Agreement, which Petitioner

knowingly and voluntarily signed, he waived indictment. (R.1 Doc. 3 & 4). Petitioner was not officially charged prior to accepting the Government's plea agreement, and therefore, his attorney could not have filed a motion to suppress at that time. *See* Fed. R. Crim. P. 12. Accordingly, even if Petitioner had produced and conveyed some factual basis for filing a motion to suppress, his attorney would have been unable to honor his request. Therefore, Petitioner is unable to show that his attorney's performance fell below the objective standard of reasonableness.

Under either of the two *Durate* prongs, Petitioner cannot show his counsel's performance fell below the objective standard of reasonableness. Therefore, Petitioner cannot satisfy the first prong of the *Strickland* test. Petitioner also cannot satisfy the second, "but for" prong of the *Strickland* test because he cannot show that "but for his counsel's unprofessional representation, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 687-88.

As previously noted, Petitioner's attorney was unable to file a motion to suppress before Petitioner entered into the Agreement. Additionally, he was given the options of either accepting or rejecting the written Agreement and pleading or not pleading guilty to an information for one count of possession of child pornography. Petitioner actually sought out a way to "help himself out" when speaking with police officers. (R2. Doc. 1 at 43). Furthermore, Petitioner has failed to provide other credible evidence as to why his counsel was ineffective. In fact, his counsel was able to negotiate the plea agreement to include the lesser charge of possession of child pornography, 18 U.S.C. § 2251A(a)(5)(B), instead of the more

severe charge of receipt of child pornography, 18 U.S.C. § 2252A(a)(2), even after Petitioner had admitted to intentionally downloading ten to fifteen images of child pornography. (R.2 Doc. 1 at 44, Doc. 6 at 6). The offense of receipt of child pornography carries a statutory mandatory minimum sentence of five-years imprisonment and a statutory cap of twenty-years imprisonment. 18 U.S.C. § 2252A(a)(2). This concession drastically reduced the number of years Petitioner could have been sentenced to had he not signed the plea agreement. Therefore, Petitioner has failed to meet the burden of proving his counsel was ineffective under the second prong of the *Strickland* standard.

When a defendant appeals despite agreeing not to do so, the prosecutor may withdraw concessions made as part of the bargain. *Nunez*, 546 F.3d at 455. In *Nunez,* the prosecutor made substantial concessions to defendant as part of the plea agreement and an element of the agreement included defendant's waiver of his right to appeal or collaterally attack the conviction and/or sentence. *Id.* The court held that the defendant had made a personal decision - a decision not to appeal and defendant had no right to countermand such a formal choice. *Id.* Therefore, the court dismissed defendant's case based on the fact that defendant had breached his plea agreement when he collaterally attacked his conviction and/or sentence. *Id.*

Analogously, Petitioner has collaterally attacked his conviction despite agreeing not to do so, and thus the Government is free to withdraw any concessions made as part of the agreed bargain. The Government made substantial concessions to Petitioner in the Agreement. The Agreement allowed Petitioner to plead guilty to

the Information, in which the Petitioner was charged with possession of child pornography, in violation of 18 U.S.C. § 2251A(a)(5)(B), which carries no minimum sentence and a statutory cap of ten years imprisonment, in exchange for the government to dismiss the receipt of child pornography claim (18 U.S.C. § 2252A(a)(2)), which carries a minimum sentence of five years imprisonment and a statutory cap of twenty years imprisonment. Petitioner made a formal choice to waive the right to collaterally attack his conviction and/or sentence and, therefore, has no right to countermand his decision unless the Agreement was involuntary, or the trial court relied on a constitutionally impermissible factor or the sentence exceeded the statutory maximum. *See Jones v. U.S.*, 167 F.3d 1142, 1144 (7th Cir. 1999). As previously noted, Petitioner has not argued that the Agreement was involuntary, or that the trial court relied on a constitutionally impermissible factor or that the sentence exceeded the statutory maximum, but instead his only argument was that his counsel was constitutionally ineffective.[2] Accordingly, Respondent's Motion to Dismiss must be GRANTED.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. § 2253(c)(2), a petitioner may only appeal from the court's judgment in his habeas corpus case if he obtains a certificate

---

[2] Ironically, since there is no factual or legal basis for a Fourth Amendment violation as discussed *supra*, counseling Petitioner to reject the favorable Agreement would itself give rise to a plausible ineffective assistance of counsel claim.

of appealability. A certificate of appealability may only be issued where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

This requirement has been interpreted by the Supreme Court to mean that a substantial showing of a denial of a constitutional right "includes showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Anderson v. Cowan*, 227 F.3d 893, 899 (2000) (*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where a district court has rejected the constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Rodriguez v. U.S.*, 286 F.3d 927, 978 (2002). The issue becomes somewhat more complicated where, the district court dismisses the petition based on procedural grounds. When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a certificate of appealability should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

Based on the record before it, the Court cannot find that reasonable jurists would find the district court's assessment of the constitutional claims debatable or

wrong. The Court found that the written plea agreement, entered into by Petitioner pursuant to Fed. R. Crim. P. 11, was valid and enforceable and therefore Petitioner had waived his right to collaterally attack his conviction and/or sentence. Additionally, even if Petitioner could have collaterally attacked his conviction and/or sentence the law is clear as to what Petitioner would have to prove for the Court to hold that his counsel was ineffective and he simply has not met that burden. *See Strickland*, 466 U.S. at 687-88.

## CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (R.2 Doc. 6) is GRANTED, Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (R.2. Doc. 1) and Petitioner's First Motion to Amend 28 U.S.C. § 2255 (R.2 Doc. 4) is DISMISSED WITH PREJUDICE, and a certificate of appealability is DENIED. IT IS SO ORDERED.

CASE TERMINATED.

Entered this 16th day of June, 2011.

s/ Joe B. McDade<br>
JOE BILLY McDADE<br>
United States Senior District Judge